Robert UMANSKY, Plaintiff–Appellant,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.

Docket No. 00–6067.

United States Court of Appeals, Second Circuit.

April 10, 2001.

Robert Umansky, pro se, Brooklyn, NY.

Sharon L. Volckhausen, Varuni Nelson, and Kathleen Mahoney, Assistant United States Attorneys, for Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, NY, for appellee.

Present JACOBS, SOTOMAYOR, Circuit Judges, and BERTELSMAN,

District Judge.*

## SUMMARY ORDER

UPON DUE CONSIDERATION of this appeal from the judgment of the United States District Court for the Eastern District of New York (Reena Raggi, *Judge*), it is hereby

ORDERED, ADJUDGED AND DE-CREED that the judgment of the district court is VACATED and REMANDED.

Appellant Robert Umansky ("Umansky") appeals from a judgment of the United States District Court for the Eastern District of New York (Raggi, *J.*) affirming the denial by the Commissioner of Social Security ("the Commissioner") of Umansky's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("SSA"), 42 U.S.C. § 401 *et seq.*

### I. *Background*

Umansky had been employed as a computer clerk by the New York City Board of Education from 1987 until he was laid off in October 1992. In July 1994, Umansky applied for disability benefits, alleging that he had been unable to work since February 1993—four months after being laid off from the Board of Education position—because of a heart condition, high blood pressure and depression. After Umansky applied for benefits, he had several consultative examinations with doctors. One doctor examined Umansky in August 1994 and noted that Umansky suffered from chest pains, that he appeared to suffer from depression, and that "psychiatric evaluation would be useful." A second doctor stated in September 1994

that his impressions were that Umansky had a psychiatric disorder and palpitations, and that he was temporarily unemployable for one to three months. Also in September 1994, another doctor, Dr. Harvey A. Barash, did a consultative psychiatric examination and determined that Umansky had a mild depressive disorder and "might benefit from some limited psychiatric treatment and counseling."

In December 1994, the Commissioner denied Umansky's application, finding that he was not disabled. This decision was upheld on reconsideration in June 1995, and Umansky filed a request the following month for a hearing before an administrative law judge ("ALJ").

Meanwhile, in May 1995, Umansky underwent another consultative examination by a physician, who noted the presence of a heart murmur and diagnosed a history of depression, left knee arthritis, hypertension and suboptimal uncorrected vision. Based on his examination, the doctor recommended that Umansky should be limited "from heavy lifting and carrying" but added that he could not confirm any limitations on Umansky's "standing, walking, sitting, or pushing, pulling of controls." In the same month, May 1995, Dr. Barash again examined Umansky and diagnosed a "mild adjustment disorder with depressed mood."

Progress notes supplied from the South Beach Psychiatric Center ("South Beach") indicate that beginning in 1995 and continuing into 1996, Umansky also began seeing, with some regularity, a clinical social worker, Robert DiGiovanni ("DiGiovanni"). DiGiovanni diagnosed Umansky with an unspecified personality disorder and dysthymic disorder. According to the

---

* The Honorable William O. Bertelsman of the United States District Court for the Eastern District of Kentucky, sitting by designation.

administrative record, specifically a one-page "outpatient physical examination" form from South Beach signed by both a physician and a psychiatrist, Umansky was diagnosed in June 1996 with "bipolar disorder," a disorder marked by "manic or manic and depressive episodes." Taber's Cyclopedia Medical Dictionary, p. 559 (1997). Subsequently, a psychiatrist prescribed an antidepressant for Umansky, and Umansky continued to see DiGiovanni for counseling.

On November 19, 1996, DiGiovanni completed a residual functional capacity report, diagnosing Umansky as severely restricted in his ability to perform daily activities such as relating to others, taking care of personal needs, understanding, remembering and carrying out instructions. On November 22, 1996, Umansky's claim was presented at a brief hearing before an ALJ. In January 1997, the ALJ issued a decision concluding that Umansky was not disabled within the meaning of the SSA.[1] The ALJ found that: 1) Umansky was not gainfully employed; 2) he had "a severe impairment or combination of impairments;" namely "hypertension and a mild adjustment disorder with depressed mood, impairments that cause significant vocationally relevant limitations," but 3) the impairment or impairments did not meet the criteria of any of the listed impairments in Appendix 1 of 20 C.F.R. § 404(P), nor had any "treating or examining physician ... mentioned findings equivalent in severity to the criteria of any listed impairment." Turning, there-fore, to Umansky's ability to perform his prior relevant work, the ALJ found that despite the above, Umansky "retain[ed] the residual functional capacity to return to the work he performed in the past."

More specifically, the ALJ found Umansky's statements concerning his impairments and their impact on his ability to work to be overstated and not credible in light of the relatively minor degree of medical treatment he required, "the reports of the treating and examining practitioners and the medical history." Although the November 1996 report prepared by DiGiovanni had described Umansky's residual functional capacity as severely limited or "moderately severe[ly]" limited in many respects, the ALJ rejected reliance on this report, finding it to be "inconsistent with the degree of psychiatric treatment received and with actual progress notes, and ... not from an acceptable medical source."

The ALJ's decision became final when the Appeals Council denied Umansky's request for review in March 1998. On February 14, 2000, the district court affirmed the Commissioner's determination that Umansky was not disabled.

On appeal, Umansky and the government inform us that Umansky reapplied for disability benefits in March 2000 and that those benefits were granted in August 2000. Umansky claims that he was originally granted benefits back to 1995, but that that decision was changed to a grant of benefits back to 1997 in light of the existence of this case. Because we were

---

1. Before granting a claimant disability benefits, a claimant must demonstrate that: (1) he is not currently engaged in a substantial gainful activity; (2) he suffers from a "severe" impairment; and (3) that impairment meets or equals the criteria of an impairment listed in 20 C.F.R. § 404(P), Appendix 1. If the impairment does not meet or equal the regulatory criteria, the claimant must demonstrate instead that: (4) the severity of the impairment nevertheless makes him incapable of performing his past relevant work; and (5) given his age, education, past work experience, and residual functioning capacity, he is incapable of performing other work which exists in the national economy. See Williams v. Apfel, 204 F.3d 48, 49 (2d Cir.1999).

not provided with a copy of the new determination, nor informed definitively of the grounds for the new determination, we cannot tell if this award of disability benefits was based on new events or diagnoses occurring after the November 1996 hearing before the ALJ or, rather, based in whole or in part on the claimant's presentation of additional evidence from the pre-November 1996 time period. We were further informed by the government at oral argument that this new determination to grant Umansky benefits was made from submitted papers without a hearing.

## II. Discussion

In reviewing the denial of Social Security benefits by the Commissioner, this Court will "set aside [an] ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." *Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir.1998). An ALJ, however, "cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir.1999). In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996); *see also Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir.1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must himself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel.") (citations omitted) (alterations in original).

We find that the ALJ did not adequately fulfill his obligation to develop the record with regard to Umansky's psychiatric condition and the potential effects of that condition on his residual functional capacity. In particular, the ALJ should have contacted South Beach to obtain opinions from acceptable medical sources, such as supervising psychiatrists, regarding the accuracy of DiGiovanni's findings that Umansky's impairment was "severe" and "moderately severe" in many respects. We observe that the availability of such medically acceptable corroboration currently missing from the administrative record is suggested by the fact that a different version of DiGiovanni's November 1996 report signed by a psychiatrist as well as DiGiovanni was submitted by plaintiff to the district court.[2] The ALJ should also have probed further with respect to the June 1996 outpatient physical examination report, which diagnosed Umansky with "bipolar disorder" in somewhat conclusory fashion. These gaps in the development of the record may potentially take on even greater significance in light of events subsequent to 1997 or if it turns out that the August 2000 grant of benefits was based on new information concerning the pre-November 1996 period that a more full development of the initial record would have uncovered.

Accordingly, we vacate the decision of the district court and remand with instructions to the district court to send the matter back to the ALJ for further development of the record and other proceedings consistent with this opinion.

---

2. The court, however, declined to rely upon it because it was not clear whether that version of the report had been presented to the ALJ. Whether or not presented to the ALJ, however, the version of the report signed by a psychiatrist still highlights a gap in the development of the administrative record.