07-1728-cv
Moran v. Astrue

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: October 23, 2008          Decided: June 24, 2009)

Docket No. 07-1728-cv

-------------------------------------

JAMES MORAN,

Plaintiff-Appellant,

- v. -

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant-Appellee.

-------------------------------------

Before:   KEARSE, SACK, and KATZMANN, Circuit Judges.

Appeal by the plaintiff, James Moran, from a judgment of the United States District Court for the Northern District of New York (Victor E. Bianchini, Magistrate Judge) affirming a denial by the Commissioner of Social Security of two applications by Moran for benefits. Moran requested a hearing before an administrative law judge to contest that denial. At the hearing, Moran proceeded pro se, and the judge failed to provide the requisite assistance to Moran in developing the record.

Vacated and remanded.

MARK SCHNEIDER, Plattsburgh, NY, for Appellant.

VERNON NORWOOD, Special Assistant United States Attorney, New York, NY (Glenn T. Suddaby, United States Attorney for the Northern District of New York; Barbara L. Spivak, Chief Counsel -- Region II, Office of the General Counsel, Social Security Administration, Syracuse, NY), for Appellee.

SACK, Circuit Judge:

Plaintiff James Moran appeals from a judgment of the United States District Court for the Northern District of New York (Victor E. Bianchini, Magistrate Judge) affirming the denial of two of Moran's applications for Social Security benefits by the Commissioner of Social Security ("the Commissioner"). In vacating and remanding, we rely principally on Cruz v. Sullivan, 912 F.2d 8 (2d Cir. 1990), which mandates that a Social Security Administrative Law Judge ("ALJ") affirmatively assist a pro se claimant in developing a record before adjudicating the merits of the claimant's applications for benefits.

**BACKGROUND**

Moran alleges that he has been disabled since September 1, 1980, by virtue of his anxiety, depression, and arthritis, among other conditions. He applied for Social Security benefits first on September 12, 1980 (the "1980 application"), again on August 15, 1986, and again on April 6, 1987 (the "1987 application"). All three applications were denied by the Commissioner.

Moran filed a fourth application for benefits on March 22, 1991 (the "1991 application").  The Commissioner initially denied the 1991 application, but upon further consideration found that Moran had been disabled as of March 12, 1991.  In 1993, Dr. David G. Welch, who performed a Social Security medical examination of Moran, found him to have a debilitating musculoskeletal condition that included "severe osteoporosis," "chronic sacroiliitis," and "tightness of muscles," and concluded that in light of his condition, Moran was "a definite candidate for . . . compression fractures."  Report of Dr. David G. Welch, M.D., dated July 28, 1993 ("Welch Report"), at 3.  Dr. Welch also observed that Moran had difficulty balancing:  "It was a real struggle for him to get a pant leg off or get his socks off while standing.  He literally would stagger about and was unable to balance on one foot at a time."  Id. at 2.  According to Dr. Welch, Moran's condition "ha[d] been slowly progressive over a period of at least ten years" prior to the consultation in 1993, and reflected "a progressive debilitating process" from which the physician "d[id] not expect a reversal."  Id. at 3.  In addition to his musculoskeletal issues, Moran was reported to have "a problem with anxiety and/or depression" and to suffer from "what appears to be an early neuropathy resulting in the proprioception dysfunction in the lower extremities."  Id.

On the basis of his 1991 application, Moran is currently receiving benefits.

3

Although each of Moran's first three applications was denied, two were improperly adjudicated. At the time of the denial of Moran's 1980 application, the Commissioner was "engaged in systematic and clandestine misapplication of disability regulations." Dixon v. Shalala, 54 F.3d 1019, 1021 (2d Cir. 1995). An applicant whose application, like Moran's, was denied pursuant to the improper procedures identified in Dixon is entitled to request reconsideration of the initial denial in accordance with the standards set forth in the remedial order of the Dixon district court. Id. at 1034-39. On August 22, 1995, Moran requested such review. Prior to this request, however, documents relating to Moran's 1980 application may have been destroyed pursuant to the Commissioner's document-retention policies. See id. at 1035.

Moran's 1987 application was also denied as a result of the Commissioner's application of flawed governing procedures and principles, as recognized by a settlement endorsed by the district court in Stieberger v. Sullivan, 792 F. Supp. 1376, modified, 801 F. Supp. 1079 (S.D.N.Y. 1992). The Stieberger settlement agreement

> was developed as a remedy for the effects of the [Social Security Administration's] "non-acquiescence policy," under which ALJs were essentially told to disregard the law of this Circuit on certain issues when adjudicating disability claims. The settlement agreement required the Commissioner to provide a New York statewide class with notice and opportunity to request the reopening of, and new decision on, [certain] disability claims . . . .

4

Shaw v. Chater, 221 F.3d 126, 136 (2d Cir. 2000). By virtue of the standards set forth in Stieberger, Moran and others similarly situated were entitled to request reconsideration of the denial of their applications. On March 12, 1993, Moran requested such reconsideration.

By letter dated May 8, 2001, the Commissioner informed Moran that the denial of his 1987 application had been reaffirmed. By letter dated May 14, 2001, the Commissioner similarly informed Moran that the denial of his 1980 application had been reaffirmed. On June 20, 2001, Moran requested a hearing before an ALJ to challenge both decisions.

On December 5, 2002, an ALJ conducted a hearing in Plattsburgh, New York, which lasted twenty-four minutes. Moran appeared pro se. The ALJ questioned both him and his wife. Shortly thereafter, by written decision dated January 14, 2003, the ALJ affirmed the Commissioner's initial decisions to reaffirm the denials of Moran's 1980 and 1987 applications. Decision of Robert Wright, ALJ, Jan. 14, 2003 ("ALJ Decision") at 8.

Moran sought review of the ALJ decision by bringing a civil action in the United States District Court for the Northern District of New York as provided for by 42 U.S.C. § 405(g). By decision and order dated March 21, 2007, the district court granted judgment to the Commissioner. Moran v. Barnhart, No. 05 Civ. 00434, slip op. at 25 (N.D.N.Y. Mar. 31, 2007).

Moran appeals.

5

**DISCUSSION**

I.   Standard of Review

"When deciding an appeal from a denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion." Kohler v. Astrue, 546 F.3d 260, 264-65 (2d Cir. 2008) (internal quotation marks omitted).  "On appeal, we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." Id. at 265 (internal quotation marks omitted).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks omitted); accord Richardson v. Perales, 402 U.S. 389, 401 (1971); Consol. Edison Co. of N.Y., Inc., v. NLRB, 305 U.S. 197, 229 (1938).

Before determining whether the Commissioner's conclusions are supported by substantial evidence, however, "we must first be satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act." Cruz, 912 F.2d at 11 (internal quotation marks omitted).  "The Act must be liberally applied, for it is a remedial statute intended to include not exclude." Id.

6

II.  Pro Se Claimants

Even when a claimant is represented by counsel, it is the well-established rule in our circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009) (internal quotation marks and brackets omitted); accord Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004), reh'g granted in part and denied in part, 416 F.3d 101 (2d Cir. 2005); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996); see also Gold v. Sec'y of Health Educ. & Welfare, 463 F.2d 38, 43 (2d Cir. 1972) (pro se claimant).  Social Security disability determinations are "investigatory, or inquisitorial, rather than adversarial." Butts, 388 F.3d at 386 (internal quotation marks omitted).  "[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits."  Id. (internal quotation marks omitted); accord Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When a claimant properly waives his right to counsel and proceeds pro se, the ALJ's duties are "heightened." Cruz, 912 F.2d at 11.[1]  The ALJ must "adequately protect a pro se

---

[1] "Although a claimant does not have a constitutional right to counsel at a social security disability hearing, she does have a statutory and regulatory right to be represented should she choose to obtain counsel.  42 U.S.C. § 406; 20 C.F.R. § 404.1705. If properly informed of this right, a claimant may waive it." Lamay, 562 F.3d at 507.

7

claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered" and by "scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts." Id. (alteration and internal quotation marks omitted); accord Lamay, 562 F.3d at 508-09. And when a claimant appears pro se and is otherwise impaired, we must "make a searching investigation of the record to make certain that the claimant's rights have been adequately protected." Cruz, 912 F.2d at 11 (internal quotation marks omitted).

III. Principles Applied

Moran argues on appeal that he was denied a full and fair hearing before the ALJ, in part because the ALJ failed to assist him in developing a record to support his application. We assume for purposes of this appeal that Moran knowingly and voluntarily waived his right to counsel. But we agree with him that the ALJ failed to help him develop the record to the extent and in the manner that was required.

Moran's situation is materially indistinguishable from that of the claimant in Cruz. There, we remanded solely on the ground that the ALJ "did not adequately fulfill his 'affirmative obligation to assist th[e] pro se claimant in developing his case.'" Cruz, 912 F.2d at 12 (alteration omitted) (quoting Eiden v. Sec'y of Health, Educ. & Welfare, 616 F.2d 63, 65 (2d Cir. 1980)). The claimant in Cruz -- a former warehouse clothes

8

sorter with a seventh-grade education who could barely speak or read English -- applied for disability on the basis of asthma and back pain. Id. at 9. Following a hearing in which the claimant testified through an interpreter, the ALJ denied his application for benefits. Id. at 10. We vacated the judgment of the district court and remanded with instructions to the district court to remand to the Secretary of Health and Human Services for further proceedings, id. at 13, based on our conclusion that "[t]he scant record herein, which consists of a thirteen-page transcript, reveals a host of lost opportunities to explore the facts," id. at 11.

A review of the transcript of Moran's hearing persuades us that the ALJ adjudicating his case similarly failed to give sufficient assistance to him in developing the record. The transcript of Moran's hearing is fewer than thirteen pages long. The ALJ failed to explore in any detail the work that Moran performed in the 1980s -- which was directly relevant to the question of whether he was disabled at that time -- or to follow up regarding other issues central to the validity of Moran's claim. Rather than a diligent effort to explore and help Moran further develop the record, the ALJ's actions were perfunctory.

The particular circumstances under which this applicant, proceeding pro se, was given a hearing make the ALJ's conduct especially problematic. Unlike disability claimants who have yet to be adjudicated disabled, Moran was -- and the ALJ knew him to be -- conclusively and unquestionably disabled with a

9

constellation of debilitating and degenerative musculoskeletal ailments for more than ten years prior to the hearing at issue.[2] Moran also suffered from severe, diagnosed problems with anxiety, as well as difficulties in relating to people. Id. at 1, 3. These varied difficulties may help explain his somewhat diffuse testimony at the hearing. Moran's impairments and vulnerability, some of which are evident from even a cursory review of the record, are no less severe than those from which the claimant in Cruz suffered.

Moran was further hampered in pursuing his claim before the ALJ because of the age of the factual issues he was required to address. As a result of the Commissioner's conduct, and by no fault of Moran's, by 2002, he had not received a proper adjudication of his 1980 or 1987 application. As the ALJ noted, the record was "scant." ALJ Decision 5. In light of the meager record and Moran's manifest debilitating condition, it was especially important for the ALJ to help Moran develop a testimonial record of the critical events -- even if those events were in the distant past.

Instead, the ALJ rendered little assistance. For example, the ALJ denied Moran's 1980 application for benefits only because Moran had performed "substantial gainful activity"

---

[2] At the hearing, the ALJ's second question to Moran was: "Now, you are currently receiving Disability Benefits?" Dec. 5, 2002 Hearing Tr. at 3; see also ALJ Decision 1 (noting that Moran "was found disabled commencing on March 12, 1991 based on applications which he filed on March 22, 1991").

10

in 1985 and 1989. Id. at 2. The ALJ made this determination solely on the basis of paystubs demonstrating that Moran had worked at an orchard and earned above a threshold amount of income in those two years. Id. But a claimant who works and earns above that threshold amount can nonetheless be properly classified as disabled if that claimant performed his or her work under "special conditions." See 20 C.F.R. §§ 404.1573(c) & 416.973(c). The ALJ never asked Moran about the work that he performed at the orchard so as to develop a record that might have supported a claim of the presence of such "special conditions" in these circumstances. Dr. Welch's 1993 report suggests that as early as 1981, Moran's work at the orchard was gradually curtailed as a result of his disabilities, (Welch Report 1), but the ALJ did not refer to that report or otherwise attempt to develop the record with respect to Moran's work at the orchard.

The ALJ also denied Moran's 1987 application in part on the basis of a 1988 report by a physician concluding that Moran could occasionally lift up to twenty pounds and bend, squat, and crawl. ALJ Decision 4-5. But the ALJ never asked Moran about his physical limitations during the relevant time period. Had Moran's testimony conflicted with the physician's report, the ALJ could have properly credited the report and discounted Moran's testimony. But the ALJ did not develop any such testimony. He therefore was unable to balance it against the physician's report. Such testimony, assuming that it conflicted with the

11

report, might have made a difference in the ALJ's consideration particularly inasmuch as he explicitly found Moran to be credible "for the most part." Id. at 6.

We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision. By vacating and remanding, we reluctantly prolong a case that is now almost thirty years old. But Moran remains, even at this late date, entitled to a proper adjudication of his claims.

**CONCLUSION**

For the foregoing reasons, we vacate the judgment of the district court and remand with instructions that the court, in turn, remand this cause to the Commissioner for further proceedings consistent with this opinion.