# United States Court of Appeals
## For the First Circuit

No. 11-2300

FANTASTIC SAMS FRANCHISE CORPORATION,

Plaintiff, Appellant,

v.

FSRO ASSOCIATION LTD., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Thompson, Circuit Judges.

Gregg A. Rubenstein, with whom Arthur L. Pressman, Sara E. Farber, and Nixon Peabody LLP were on brief, for appellant.
W. Michael Garner, with whom Elliot R. Ginsburg and W. Michael Garner, P.A. were on brief, for appellee.

June 27, 2012

**LYNCH, Chief Judge**.  In 2011, Fantastic Sams Regional Owners Association ("FSRO") filed a Demand for Arbitration against Fantastic Sams Franchise Corporation ("FSFC") with the American Arbitration Association ("AAA").  FSRO's Demand, made on behalf of its members, who are franchisees of Fantastic Sams and who have individual license agreements with FSFC, alleged that FSFC had breached those license agreements.  FSFC then filed a petition in federal district court pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to stay FSRO's arbitration and to compel FSRO's members to arbitrate their claims with FSFC on an individual basis.

The district court allowed FSFC's petition as to some of the license agreements at issue, based on the terms of those agreements, and that decision is not at issue in this appeal. Fantastic Sams Franchise Corp. v. FSRO Ass'n, 824 F. Supp. 2d 221, 225-26 (D. Mass. 2011).  However, it denied relief as to ten other agreements, which contained different language.[1]  FSFC appeals this denial.  We affirm the judgment of the district court allowing these claims to proceed to arbitration.  We leave to the arbitrators the issue of whether FSRO may compel arbitration under the terms of the agreements at issue, or whether its members must proceed individually.

---

[1]     Several of these franchisees have settled their claims with FSFC, reducing the remaining number of agreements at issue on appeal from ten to six.

FSFC is the franchisor of the nationwide chain of hair salons known as "Fantastic Sams." FSFC licenses the rights to its brand to twenty-five regional owners, who are organized into designated geographic regions and who license and manage over 1,200 individual salons. In return for the exclusive right to conduct business under the "Fantastic Sams" brand, the regional owners, among other things, pay FSFC a fee of fifteen percent of any amount collected in royalties from their individual salons plus a weekly advertising fee.

The regional owners have entered into thirty-five regional license agreements with FSFC; all thirty-five agreements provide for resolution of disputes via arbitration. The terms of the arbitration clauses vary somewhat among the license agreements, but for purposes of this case they may be grouped into two categories. Twenty-five of the agreements expressly prohibit "class arbitration" in the following (or similar) terms: "any arbitration between FSFC and [the regional licensee] shall be of [regional licensee's] individual claim only" and "[n]o arbitration shall be conducted on a class-wide basis." These twenty-five agreements were executed at various dates after 1988.

In contrast, the remaining ten agreements, which were executed at various dates before 1988, do not contain any express prohibitions on class or collective arbitration. Beyond this, they

set out in broad terms the matters as to which arbitration is required: "Any controversy or claim arising out of or relating in any way to this Agreement or with regard to its formation, interpretation or breach shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association."

The regional owners also formed the non-profit corporation FSRO, the appellee here, for the purpose of promoting their business interests. The owners comprise the exclusive membership of FSRO, and each member is party to at least one regional license agreement with FSFC.

Invoking the provisions for arbitration in the regional license agreements, on July 25, 2011, FSRO filed a Demand for Arbitration against FSFC seeking declaratory and injunctive relief on behalf of its members both for breach of contract and related violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A. FSRO alleged that FSFC had "engaged in a pattern of conduct designed to depress the price of Regional Owners' businesses by making it impossible or impractical to offer or sell such regions on the open market" and thus was in breach of the regional license agreements.

On August 22, 2011, FSFC filed a petition pursuant to Section 4 of the FAA, 9 U.S.C. § 4, in federal district court seeking both to stay FSRO's Demand for Arbitration and to compel

-4-

FSRO's members to arbitrate their claims individually. FSFC argued that the express prohibitions on "class-wide" arbitration in twenty-five of the regional license agreements at issue barred FSRO from seeking to represent its members in arbitration under those agreements.

Although the remaining ten agreements are devoid of similar class-wide arbitration prohibitions, FSFC argued that FSRO's arbitration as to these ten was foreclosed under the Supreme Court's decision on class arbitration in Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130 S. Ct. 1758 (2010). That decision, FSFC contended, holds as a matter of law that no class or collective arbitration may proceed unless the arbitration agreement expressly authorizes those forms of proceedings. Because the ten agreements here do not contain such express consent to arbitration by an association, FSFC argued, FSRO's representative action must be barred.

In its September 21, 2011, response in opposition, FSRO argued that FSFC had misread Stolt-Nielsen, that the decision does not require the express consent posited by FSFC, and that, in any event, neither Stolt-Nielsen nor the prohibitions on "class-wide" arbitration contained in some of the agreements applies to bar associational arbitration, which, FSRO argued, is different in kind from class arbitration. FSRO also urged the court to send the dispute to be decided by the arbitrators.

As said, the district court granted FSFC's petition as to the twenty-five agreements expressly barring class arbitration, finding that the requirements in those agreements "that arbitration be of a licensee's individual claim only," foreclosed FSRO's action. Fantastic Sams Franchise Corp., 824 F. Supp. 2d at 225. FSRO does not appeal this decision.

The court denied FSFC's petition as to the remaining ten agreements, on the grounds that "[t]he arbitration clause in those contracts is very broad and applies, without qualification, to all controversies or claims arising from or related to the contract, including issues of interpretation and breach," and that the contracts "incorporate[] by reference the rules of the AAA, which, in turn, provide that the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Id. The court concluded that whether the agreements preclude FSRO's action "is a matter of contract interpretation which the parties have agreed to submit to arbitration." Id.

## II.

We review the district court's order denying FSFC's petition to stay arbitration and compel individual arbitrations de novo as it presents a pure question of law. PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010). We may affirm the district court's order on any ground manifest in the record.

-6-

<u>Houlton Citizens' Coal.</u> v. <u>Town of Houlton</u>, 175 F.3d 178, 184 (1st Cir. 1999).

As an initial matter, FSFC argues on appeal that because the agreements at issue do not expressly permit FSRO's associational action, under the Supreme Court's decision in <u>Stolt-Nielsen</u>, the action is prohibited outright.

FSFC reads <u>Stolt-Nielsen</u> too broadly. The Court granted certiorari in that case to decide "whether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the [FAA]." 130 S. Ct. at 1764. The Court held that an arbitration panel had "exceeded its powers," <u>id.</u> at 1770, under the FAA, state, and federal law, when it elected to follow its own policy preferences and permit class arbitration to go forward where the parties to an arbitration agreement had reached "no agreement" on that subject, <u>id.</u> at 1776.

The parties in <u>Stolt-Nielsen</u> stipulated that their agreement was unambiguously "silent" on class arbitration, not merely in the sense that the agreement made no express reference to class arbitration, but because "they had not reached any agreement on the issue." <u>Id.</u> at 1768. Although it acknowledged this "silence," the arbitration panel nonetheless concluded that class arbitration should be permitted for a variety of policy-related reasons. <u>Id.</u> at 1768-70 & n.7. The panel stayed the arbitration

to allow the parties to seek judicial review of its decision.  Id. at 1766.  On review, the Supreme Court reversed.

The Court held that class arbitration may not be imposed on a party to an arbitration agreement "unless there is a contractual basis for concluding that the party agreed to" submit to class arbitration.  Id. at 1775 (first emphasis added).  The Court found no such contractual basis present on the facts before it.  Although the arbitration panel had considered the language, context, and usage of the agreement in that case, the Court held that these considerations were "beside the point" in a case in which the "parties were in complete agreement regarding their [lack of] intent."  Id. at 1770.  Once the parties stipulated that they had reached "no agreement" on class arbitration, id. at 1766, "the only task . . . left for the panel . . . was to identify the governing rule applicable" in the case, id. at 1770.  "[I]nstead of identifying and applying a rule of decision derived from the FAA or either maritime or New York law, the arbitration panel imposed its own policy choice and thus exceeded its powers."  Id.

The Court had no occasion in Stolt-Nielsen to consider what may constitute a "contractual basis" for class arbitration. Id. at 1776 n.10.  It did, however, reiterate the general rule that a court or arbitrator tasked with construing an arbitration agreement "must give effect to the contractual rights and expectations of the parties;" id. at 1773-74 (quoting Volt Info.

-8-

Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)) (internal quotation marks omitted), "as with any other contract, the parties' intentions control," id. at 1774 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)) (internal quotation marks omitted). The Court acknowledged that "[i]n certain contexts, it is appropriate to presume" that the parties "implicitly authorize[d]" class arbitration. Id. at 1775. However, this implicit authorization may not be inferred from the mere "fact of the parties' agreement to arbitrate." Id. For example, a finding that an agreement does not preclude class arbitration is not enough to conclude that the agreement authorizes it when the parties have said that they reached no agreement on the subject.

We thus reject the very different precept, on which FSFC's argument depends, that there must be express contractual language evincing the parties' intent to permit class or collective arbitration. Stolt-Nielsen imposes no such constraint on arbitration agreements. The two other circuits to have addressed this issue agree. In Sutter v. Oxford Health Plans LLC, 675 F.3d 215 (3d Cir. 2012), the Third Circuit held that "Stolt-Nielsen did not establish a bright line rule that class arbitration is allowed only under an arbitration agreement that incants 'class arbitration' or otherwise expressly provides for aggregate procedures," id. at 222, and in Jock v. Sterling Jewelers Inc., 646

-9-

F.3d 113 (2d Cir. 2011), cert denied, 132 S. Ct. 1742 (2012), the Second Circuit found that "Stolt-Nielsen does not foreclose the possibility that parties may reach an implicit -- rather than express -- agreement to authorize class-action arbitration," id. at 123 (citation and internal quotation marks omitted).

As a fallback, FSFC argues that the arbitration agreements at issue here are "silent" on class arbitration, within the meaning of the "silence" recognized in Stolt-Nielsen, and thus preclude FSRO's action. FSFC's argument fails because the agreements at issue here are not "silent" in the same sense that the agreement was silent in Stolt-Nielsen. Furthermore, the Supreme Court has not extended Stolt-Nielsen to the type of associational action brought by FSRO, which is different in many respects from the class-action arbitration at issue in Stolt-Nielsen. We cannot conclude, under the auspices of Stolt-Nielsen, that as a matter of law the broad arbitration clause at issue here precludes arbitration of this issue.

First, because the parties to the arbitration agreement at issue in Stolt-Nielsen stipulated that they had reached "no agreement" on class-wide arbitration, there was no occasion for any inquiry into the parties' intent on that subject. In contrast, in this case, it is conceivable that an arbitrator could find more than silence in the arbitration agreements on whether the "parties

-10-

agreed to authorize" the type of associational action brought by FSRO.  Stolt-Nielsen, 130 S. Ct. at 1776 n.10.

In this case, the relevant language in the arbitration agreements is quite broad and the parties vigorously dispute both its meaning and the intentions underlying it.  For example, additional evidence could reveal that the later change in language reflects a conscious choice by the parties to exclude some forms of arbitration, available prior to 1988, after that date.  That is, there may have been no intent to exclude class arbitration, much less associational arbitration, before 1988.  In addition, there may be other evidence of intent presented to the arbitrators, such as industry practice.  See id. at 1769 n.6 ("Under both New York law and general maritime law, evidence of 'custom and usage' is relevant to determining the parties' intent when an express agreement is ambiguous.").  Thus, this is unlike Stolt-Nielsen, where the language of the arbitration agreement and circumstances surrounding its formation "left no room for an inquiry regarding the parties' intent."  Id. at 1770.

In addition, we cannot say as a matter of law that FSRO's associational action in this case is equivalent to a class action. In Stolt-Nielsen, the Court was concerned with the particular features of class-action arbitrations and with the fundamental changes those features work in the arbitration process.  The Court held that an arbitrator may not infer an agreement to authorize

-11-

class arbitration from the sole fact of the parties' agreement to arbitrate because "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." Id. at 1775.

The Court highlighted "just some of the fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration." Id. at 1776. An arbitrator resolves not a single dispute between the parties, but instead many disputes between hundreds or thousands of parties, potentially including non-domestic parties. Id. Further, the arbitrator's award no longer binds just the parties to the arbitration agreement, but adjudicates the rights of absent parties as well. Id. The "commercial stakes of class-action arbitration are comparable to those of class-action litigation," but judicial review is limited. Id. Finally, "the presumption of privacy and confidentiality" that typically applies in many bilateral arbitration agreements may not apply. Id. (quoting Am. Arbitration Ass'n, Supplementary Rules for Class Arbitrations, Class Rule 9(a) (2003)) (internal quotation marks omitted).

In contrast, in this case, FSRO does not seek to represent any absent parties, or any parties who are not signatories of the agreements at issue. Nor does FSRO seek to bring any claims or obtain any relief not arising directly out of

the agreements. In this action, FSRO's members cannot, for example, obtain individualized damage awards, as in some class actions. In addition, the arbitrators do not have to certify a class, or provide public notice of the arbitration, and the proceedings accordingly may remain confidential.

It is conceivable that some associational actions in arbitration would seek to do these things and so raise some of the same concerns that animated the Court's decision in Stolt-Nielsen. However, FSRO's action in this case does not appear to raise any of those concerns.[2]

The question devolves into whether the court or the arbitration panel should decide the merits of the parties' dispute -- whether FSRO may bring its associational action -- in this case. FSFC argues that the dispute is one for the courts to decide under the Supreme Court's decision in Stolt-Nielsen and under a separate

---

[2]    In contrast, in this case, although it did not itself sign the arbitration agreements with FSFC, FSRO is composed exclusively of the twenty-five regional owners who make up the Fantastic Sams franchise, each of whom have signed an arbitration agreement with FSFC. FSRO's action, which it has brought under these agreements, exclusively on behalf of the signatories of those agreements, seeks declaratory and injunctive relief from what it alleges is FSFC's breach of the agreements. FSRO is not a third party beneficiary, which would raise different issues. See, e.g., Republic of Iraq v. BNP Paribas USA, No. 11-1356, 2012 WL 1021032, at *1-2 (2d Cir. Mar. 28, 2012) (holding that whether the Republic of Iraq may arbitrate breach of contract and fiduciary duty claims as a purported third-party beneficiary of a contract between the United Nations and BNP Paribas in connection with a 1995 United Nations resolution creating an exception to economic sanctions on Iraq for the "Oil-for-Food Program" presented a question of arbitrability for the courts).

line of cases which deal more directly with that question. See, e.g., Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942 (1995); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-47 (1964). We reject FSFC's arguments.

First, the question before the Supreme Court in Stolt-Nielsen was whether the arbitrators had exceeded their powers in permitting arbitration;[3] it was not whether the court or the arbitration panel should decide the issue of whether class arbitration can go forward when the contract is silent on the question.[4] The parties in Stolt-Nielsen expressly assigned that issue to the arbitration panel, and no party argued that the assignment was impermissible. 130 S. Ct. at 1772 ("[W]e need not revisit [the question of whether the court or arbitrator should decide whether a contract permits class arbitration] here because the parties' supplemental agreement expressly assigned this issue to the arbitration panel, and no party argues that this assignment was impermissible."). FSFC's argument that Stolt-Nielsen disposes of this question thus fails.

---

[3]    The Court reserved the question of whether the "manifest disregard" standard of review for arbitral awards survived Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008). Stolt-Nielsen, 130 S. Ct. 1758, 1768 n.3 (2010).

[4]    The Stolt-Nielsen majority concluded that Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003), had left that question open.  130 S. Ct. at 1771-72.

-14-

FSFC also argues that the parties' dispute presents a "substantive question of arbitrability" which must be decided by the courts under the Supreme Court's decisions on arbitrability in First Options of Chicago, Inc. v. Kaplan, and other related cases. See, e.g., Howsam, 537 U.S. 79; AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643 (1986); John Wiley & Sons, 376 U.S. 543.

The Supreme Court has held that in certain limited circumstances, "[u]nless the parties clearly and unmistakably provide otherwise," AT&T Techs., 475 U.S. at 649, courts should assume that the parties to an arbitration agreement intended the courts to decide "dispositive gateway . . . 'question[s] of arbitrability,'" Howsam, 537 U.S. at 83. The Court has cautioned that this interpretive rule must be construed narrowly, for any number of non-merits questions could be characterized as "dispositive" or "gateway" questions in the sense that their "answer will determine whether the underlying controversy will proceed to arbitration on the merits." Id.

The scope of "the phrase 'question of arbitrability'" is "far more limited." Id. It includes questions about whether the parties have a valid arbitration agreement at all, Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003), and whether a concededly valid arbitration clause encompasses a particular type of controversy, Howsam, 537 U.S. at 84. Thus, the Court has held that

-15-

a court should decide whether an arbitration agreement survived a corporate merger, John Wiley & Sons, 376 U.S. at 546-47, whether a party to an arbitration agreement could force a nonparty into arbitration, First Options of Chi., 514 U.S. at 942-43, and whether a particular labor-management dispute falls within the arbitration clause of a collective bargaining agreement, AT&T Techs., 475 U.S. at 649.

The Court has distinguished this narrow class of "questions of arbitrability" from "'procedural' questions which grow out of [a] dispute and bear on its final disposition," Howsam, 537 U.S. at 84 (quoting John Wiley & Sons, 376 U.S. at 557) (internal quotation marks omitted), and which, presumptively are for the arbitrator to decide, id.

Unlike a "question of arbitrability," the parties' dispute in this case does not implicate the validity of the arbitration agreement or present any question of whether FSRO's particular claims come under the arbitration agreement. There is no dispute here that the district court, quite appropriately, first looked for whether there was a valid, contractual agreement to arbitrate. See First Options of Chi., 514 U.S. at 943. Neither party disputes the conclusion that there is such an agreement here. FSFC also concedes that "the parties agree that FSRO's claims are subject to the franchise agreements' arbitration requirement."

-16-

The more limited question here is of the kind that an arbitrator would typically decide, and does not raise an issue of "arbitrability." Under the Arbitration Rules of the American Arbitration Association, arbitrators typically decide questions which concern the scope of their own jurisdiction. This may include questions concerning allegations of waiver, defenses to arbitrability, and whether conditions precedent to arbitrability have been fulfilled. Howsam, 537 U.S. at 84. Arbitrators may also decide such questions as whether to consolidate arbitrations into a single proceeding. See, e.g., Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co., 671 F.3d 635, 640 (7th Cir. 2011) ("Consolidation of suits that are going to proceed anyway poses none of the[] potential problems [posed by class arbitration] . . . . Just as consolidation under Rule 42(a) does not change the fundamental nature of litigation, so consolidation of the [parties'] claims would not change the fundamental nature of arbitration."). Here, FSFC has conceded that FSRO's underlying claims fall within the arbitration agreements.

Our conclusion that the parties' associational dispute should be decided by the arbitrators is reinforced by the sweeping language of the arbitration clauses at issue here and by the conscious change in language subsequently. The arbitration provision in the agreements reads, "Any controversy or claim arising out of or relating in any way to this Agreement or with

regard to its formation, interpretation or breach shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association."  The question of whether the parties to this arbitration agreement "agreed to authorize" an action like FSRO's, <u>Stolt-Nielsen</u>, 130 S. Ct. at 1776 n.10, is one for the arbitrators to decide.

III.

The district court's denial of FSFC's petition is affirmed.