21-1935-cv
*Krystal Rivers v. Kilolo Kijakazi*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of March, two thousand twenty-three.

Present:
> JOHN M. WALKER, JR.,
> BARRINGTON D. PARKER, JR.,
> EUNICE C. LEE,
> *Circuit Judges*.

_____

KRYSTAL RIVERS,

> *Plaintiff-Appellant*,

v.                                                      21-1935-cv

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

> *Defendant-Appellee*.

_____

| | |
|---|---|
| For Plaintiff-Appellant: | MARK SCHNEIDER, Plattsburgh, NY. |
| For Defendant-Appellee: | CANDACE H. LAWRENCE, Special Assistant United States Attorney (Michael J. Pelgro, Regional Chief Counsel – Region I, Office of the General Counsel of the Social Security Administration, *on the brief*), *for* |

Carla B. Freedman, United States Attorney for the Northern District of New York, Boston, MA.

Appeal from the United States District Court for the Northern District of New York (Lovric, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED AND REMANDED**.

Plaintiff-Appellant Krystal Rivers filed an application pro se for Supplemental Security Income ("SSI") on October 4, 2016, based on a claimed limited ability to work due to a spinal injury and mental health issues—including a substance abuse disorder, depression, and anxiety. After her claim was initially denied, Rivers appealed and the matter was assigned to an administrative law judge ("ALJ"). Although the ALJ found that Rivers had severe impairments that significantly limited her ability to perform basic work activities, he ruled against her, reasoning that the medical records before him showed that Rivers was able to work sufficiently and thus was not disabled in a manner that qualified her for SSI. Rivers filed suit in district court against the Commissioner of Social Security, challenging the ALJ's decision, and the United States Magistrate Judge assigned to the matter affirmed the ALJ's decision. We assume the parties' familiarity with the underlying facts, procedural history, and issues and arguments on appeal.

On review of a "denial of Social Security benefits, our focus is not so much on the district court's ruling as it is on the administrative ruling." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (internal quotation marks omitted). "[I]t is not our function to determine *de novo* whether a plaintiff is disabled." *Id*. (alteration marks omitted). Rather, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal

2

quotation marks omitted).

Rivers argues that the ALJ failed to adequately develop the administrative record. We agree.

"[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (alterations and internal quotation marks omitted). The ALJ's duty to develop the record reflects "the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks omitted). Where, as here, the claimant proceeds pro se, "the ALJ's duties are heightened." *Moran*, 569 F.3d at 113 (internal quotation marks omitted). "The ALJ must adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered and by scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts." *Id*. (alteration marks and internal quotation marks omitted). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks omitted). An ALJ's failure to develop the record warrants remand. *See id.* at 79–80.

For claims filed prior to March 27, 2017, like this one, the ALJ's findings of fact are constrained by "the treating physician rule." *Colgan v. Kijakazi*, 22 F.4th 353, 359 & 359 n.2 (2d Cir. 2022) (citing 20 C.F.R. § 404.1527(c)(2)). "The treating physician rule, as its name connotes, states that the medical opinion of a claimant's treating physician must be given 'controlling weight' if it 'is well-supported by medically acceptable clinical and laboratory

3

diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Id.* at 359–60 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).

Here, the ALJ was on notice that Rivers had three treating physicians who had treated her for her spinal injury and back pain, and that Rivers had seen one of the three, Dr. Bonnabesse, as recently as a few weeks prior to her 2019 hearing before the ALJ. The ALJ, however, did not contact any of these treating physicians for their medical opinion on the extent to which Rivers's spinal injury impacted her ability to function. This failure to develop the record is legal error. *Moran*, 569 F.3d at 113. Indeed, the ALJ had before him a 2014 report from Dr. Bonnabesse stating that Rivers was "classified with a 75% temporary marked partial disability with restrictions" on her ability to move, Special App'x 16, and he knew that Dr. Bonnabesse had thought Rivers's condition had only gotten worse: Rivers testified that Dr. Bonnabesse advised her to apply for SSI because, after a recommended spinal surgery increased her back pain, he told her that he did not know what else he could do to help her. Under these circumstances, the ALJ should have contacted Dr. Bonnabesse for his opinion on the extent to which Rivers's back pain impeded her ability to work. *See Moran*, 593 F.3d at 113; *see also, e.g.*, *Guillen v. Berryhill*, 697 F. App'x 107, 108–09 (2d Cir. 2017) (vacating denial of SSI where ALJ "failed to obtain a medical source statement from [pro se claimant]'s treating physician, or to encourage [pro se claimant] to do so herself," where the medical records did not opine on how claimant's "impairments affect or do not affect her ability to work"); *Umansky v. Apfel*, 7 F. App'x 124, 127 (2d Cir. 2001) (vacating and remanding for failure "to develop the record" with material on "residual functional capacity" because "the ALJ should have contacted" the clinic where pro se claimant had been treated).

Furthermore, in reviewing an ALJ's findings, we assess whether "substantial evidence lies in support of the ALJ's determination." *Colgan*, 22 F.4th at 359. "[T]he substantial evidence

4

standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations." *Id.* (quoting *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014)). We take this approach in assessing how an ALJ considers "internal inconsistencies" in the medical records before him. *See id.* at 362. Here, the ALJ's rejection of Rivers's disability claim appears to rely in large part on an internally inconsistent report from a consulting physician hired by the Social Security Administration to assess Rivers's functional capacity. The consulting physician's report says Rivers "was unable to stand and walk on heels and toes. She was unable to squat. Can walk on heels and toes without difficulty. Squat full." Record on Appeal 1255. Despite this plain contradiction, the ALJ gave this "opinion . . . some weight" and read it as supporting the conclusion that Rivers is "less restricted" by her disability because it found she "was able to walk on heels and toes." Special App'x 17. The ALJ provides no explanation of why he gave preference to the part of the report cutting against Rivers's claim over the preceding sentences that would support her claim. Faced with such an obviously contradictory medical opinion like this, the ALJ should have either sought clarification from the consulting physician or, at minimum, given a cogent explanation in support of his reading of the opinion.

Finally, an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79 (internal quotation marks omitted); *see also Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (citing *Rosa* and vacating and remanding). Here, the ALJ did just that, as his rejection of Rivers's claimed impairments relies heavily on what he viewed as her "ability to perform . . . adequate activities of daily living," including caring "for two small children," as well as his view that "claimant has not generally received the type of medical treatment for her alleged back pain one would expect for a totally disabled individual." Record

5

on Appeal 23. This is legal error. The ALJ had no competent medical opinion before him on "the type of medical treatment . . . one would expect" of someone in Rivers's claimed situation. And the claim about Rivers's "daily living" is an oddity: There is nothing inconsistent between her claim of debilitating back pain and her taking care of her children, especially given that she told the ALJ she "receive[s] assistance with childcare on a daily basis from her father, his girlfriend and [her] aunt." *Id.* at 16. Furthermore, the ALJ's conclusion is at odds with the evidence that Rivers's medical condition impedes her ability to care for her family, such as how she cannot lift her three-year-old child above her head.

* * *

Accordingly, the judgment of the district court hereby is **VACATED** and this matter **REMANDED** to the district court with instructions to remand the matter to the Commissioner for further proceedings consistent with this order. In particular, the Commissioner should attempt to further develop the administrative record regarding Rivers's functional capacity.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6