ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Leroy Pugh ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently *308 before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 7; Dkt. 9), and Plaintiff's reply (Dkt. 10). For the reasons discussed below, Plaintiff's motion (Dkt. 7) is granted, the Commissioner's motion (Dkt. 9) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed his application for SSI on November 19, 2014. (Dkt. 6 at 22, 72).[2] In his application, Plaintiff alleged disability beginning January 1, 2008, due to "[f]eet problems, pin in right wrist, [and] double stomach[ ] hernia." (Id. at 22, 188). Plaintiff's application was initially denied on April 23, 2015. (Id. at 22, 90-101). A video hearing was held before administrative law judge ("ALJ") Benjamin Chaykin on October 4, 2016. (Id. at 22, 40-71). Plaintiff appeared in Rochester, New York, and the ALJ presided over the hearing from Alexandria, Virginia. (Id. ). On December 19, 2016, the ALJ issued an unfavorable decision. (Id. at 19-34). Plaintiff requested Appeals Council review; his request was denied on July 3, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 5-7). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Bowen v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, *309 or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. § 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 19, 2014, the application date. (Dkt. 6 at 24).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "ventral hernias status-post repair and lysis of adhesions; right wrist scaphoid nonunion status-post fusion and hardware removal; bilateral plantar fibroma and pes planus; obesity ; depression and polysubstance abuse disorder." (Id. ). The ALJ further found that Plaintiff's medically determinable impairments of lumbar degenerative disc disease, peptic ulcer, gastritis, esophagitis, history of anxiety disorder and probable borderline intellectual functioning, were non-severe. (Id. at 25).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 26). The ALJ particularly considered the criteria of Listings 1.02, 5.00, 12.04, and 12.09 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p. (Id. at 26-28).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. § 416.967(b), with the additional limitations that Plaintiff perform:
(1) occasional climbing of ropes, scaffolds or ladders; (2) frequent climbing of *310 ramps or stairs; (3) frequent stooping; (4) frequent handling and fingering with the non-dominant right upper extremity; and (5) limited to simple tasks, simple instructions and simple work-related decisions.
(Id. at 28). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 32).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of marker/labeler, cleaner, and produce weigher. (Id. at 33-34). Accordingly, the ALJ found that Plaintiff is not disabled as defined in the Act. (Id. at 34).
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the mental RFC finding is not supported by medical opinion evidence, and the ALJ improperly rejected portions of the psychiatric opinions without adequate explanation; (2) the physical RFC finding is not supported by medical opinion evidence; (3) the ALJ erred in giving little weight to five consulting examining opinions because they predated the present application; and (4) the ALJ failed to develop the record by ordering intelligence testing. (Dkt. 7-1 at 1). Because the Court concludes that the physical RFC finding is not supported by substantial evidence, this matter is remanded for further proceedings, consistent with this Decision and Order.
A. The RFC Finding
In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin , 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:
An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.... This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.
Quinto v. Berryhill , No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 20030, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin , 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).
In assessing Plaintiff's physical RFC, the ALJ discussed the following medical opinions in the record: (1) a 2008 examination by Harbinder Toor, M.D., a consultative examiner; (2) a 2011 examination by Sandra Boehlert, M.D., a consultative examiner; (3) a 2012 exam by Ernesto Levy, M.D., a consultative examiner; (4) a 2015 examination by Dr. Toor; and (5) a 2016 examination by Jeffrey Fink, M.D., Plaintiff's treating physician for his wrist impairment. (Dkt. 6 at 29-32).
*311 Dr. Toor first examined Plaintiff in 2008. (Id. at 395-99). On December 12, 2008, Dr. Toor noted that Plaintiff's gait was normal, but that he had difficulty walking on the heels and toes of his feet, due to corns and callosities. (Id. at 396). Plaintiff's squat was "50% of full, [with] pain in the left knee." (Id. ). Plaintiff was not using any assistive devices, did not need any help changing for the exam or getting on and off of the examination table, and was able to rise from the chair without difficulty. (Id. ). Dr. Toor found small areas of swelling in Plaintiff's neck and wrist, and noted an abdominal hernia. (Id. at 396-97). An examination revealed limited range of motion in the cervical and lumbar spine; positive straight leg raise tests bilaterally, with pain in Plaintiff's back; pain in the right wrist with limited range of motion, as well as swelling and tenderness; normal movements in the left wrist, left and right knees, ankles, and hips; and strength at "5/5" in the upper and lower extremities. (Id. at 397). Dr. Toor further noted that Plaintiff's hand and finger dexterity was not intact in Plaintiff's right hand, with grip strength of "4/5", and "mild difficulty grasping, holding, writing, tying the shoes, zipping a zipper, and buttoning a button with the right hand. He can use his right hand with mild difficulty." (Id. at 398). Dr. Toor issued the following medical source statement:
[Plaintiff] has moderate limitation to standing/walking a long time because of pain in the feet due to callosities/corns. Pain in the left knee, hips, and back also interfere with his daily routine, such as physical activities, walking or standing a long time, or sitting a long time. He also has mild difficulty with the right wrist. He can use his right hand, but with mild difficulty for grasping, holding, writing, tying the shoes, zipping a zipper, and buttoning a button. Left hand has normal function. He has mild difficulty twisting, bending, and extending of the neck spine.
(Id. at 398).
Dr. Boehlert examined the Plaintiff on July 13, 2011. (Id. at 405-08). Dr. Boehlert observed a normal gait and noted that Plaintiff could not walk on his toes, either "due to poor effort or pain in the balls of [his] feet." (Id. at 406). Plaintiff's squat was "halfway down." (Id. ). Plaintiff's stance was normal and he used no assistive devices. (Id. ). He needed no help changing for the exam, getting on and off the exam table, and was able to rise from the chair without difficulty. (Id. ). On exam, Plaintiff's cervical and lumbar spine had full range of motion, and his straight leg raise test was negative bilaterally. (Id. at 407). He also had full range of motion in his shoulders, elbows, forearms, wrists, hips, knees, and ankles. (Id. ). Plaintiff had tenderness to palpation in the balls of his feet. (Id. ). Plaintiff's hand and finger dexterity were intact. (Id. ). Dr. Boehlert issued the following medical source statement:
The claimant has moderate limitation to heavy ambulation or heavy exertion in the standing position due to feet pain, this may improve with treatment. Recommend repeat in one year. The claimant should avoid driving or using heavy machinery or working at heights due to his frequent blackouts without a work-up.
(Id. at 408).
Dr. Levy examined Plaintiff on April 26, 2012. (Id. at 436-40). Dr. Levy observed that Plaintiff's gait was "slightly abnormal because of mild limping related to pain on the sole of the left foot." (Id. at 437). Plaintiff could walk on his heels and toes and squat full. (Id. ). His stance was normal, and he used no assistive devices. (Id. at 437-38). Plaintiff did not need any help changing for the exam, getting on and off *312 of the exam table, and was able to rise from the chair without difficulty. (Id. at 438). Dr. Levy noted Plaintiff's stomach hernia. (Id. ). An examination revealed full range of motion in the cervical and lumbar spine; negative straight leg raise test; and full range of motion in the shoulders, elbows, forearms, left wrist, hips, knees, and ankles. (Id. at 438-39). Plaintiff had limited flexion and extension in his right wrist, as well as a "cyst-like formation" on the right wrist. (Id. at 439). Further, Plaintiff had a soft tissue mass on the bottom of his left foot. (Id. ). Dr. Levy noted that this abnormality was tender, and "suggested the possibility of plantar tenosynovitis." (Id. ). Fine motor activity of the hands was intact. (Id. ). Dr. Levy opined that Plaintiff has "mild restriction of standing, walking, lifting and carrying heavy weight." (Id. at 440).
Dr. Toor performed another examination on April 21, 2015. (Id. at 339-42). Dr. Toor noted that Plaintiff used a cane, and observed the following:
Gait abnormal, unsteady, limping towards his right side with and without the cane. Heel-to-toe walking with and without the cane declined. Squatting 20% of full with and without the cane. Station normal. He cannot stand more than a few minutes without the cane. He needs the cane medically for standing and walking. Difficulty getting out of the chair. Difficulty getting on and off the examination table. Difficulty changing for the exam.
(Id. at 340). Dr. Toor noted masses in Plaintiff's right wrist and abdomen, as well as callosities in both feet. (Id. ). On examination, Dr. Toor found: full flexion, extension, and lateral flexion of the cervical spine; limited range of motion of the lumbar spine; positive straight leg raise test, both sitting and supine bilaterally; full movement in the shoulders, elbows, and left wrists, but "right wrist palmar flexion 10 degrees and dorsiflexion 10 degrees, tenderness and swelling"; and full movement in the hips, knees, and ankles, with tenderness in the ankles. (Id. at 341). Dr. Toor also found that Plaintiff's hand and finger dexterity was not intact in his right hand, and grip strength of "2/5". (Id. at 342). Dr. Toor noted that Plaintiff had "moderate-to-severe difficulty grasping, holding, writing, tying the shoelaces, zipping the zipper, buttoning the button, manipulating the coin, or holding an object with the right hand." (Id. ). Dr. Toor issued the following medical source statement:
[Plaintiff] has moderate-to-severe limitation standing, walking, bending, lifting, and carrying. Pain interferes with his balance. He has moderate limitation sitting a long time. He has moderate-to-severe limitation doing fine motor activities with the right hand.
(Id. at 342).
Finally, on March 15, 2016, Dr. Fink completed a physical assessment. (Id. at 539-42). Dr. Fink had performed Plaintiffs 2015 right wrist surgery. (Id. at 540). Dr. Fink found that Plaintiff had no restrictions, limitations, or disability. (Id. at 540-42). The form completed by Dr. Fink is mostly blank, aside from notations of "no disability", "no limitations", and "no restrictions." In other words, there are no attached notes relating to any physical examination performed by Dr. Fink in conjunction with his completion of the assessment.
The ALJ assigned "moderate weight" to the opinion of Dr. Fink, because he treated Plaintiff only for his hand complaints, and the record conflicted with his assessment that Plaintiff did not have any physical restrictions using his right hand following surgery. (Id. at 31-32). The ALJ assigned Dr. Toor's 2015 opinion "moderate weight," because it was not supported by *313 medical evidence in the record, and because it was "vague" and "[did] not delineate the extent to which the claimant could perform certain activities." (Id. at 32). Finally, the ALJ assigned "limited weight" to the opinions of Drs. Boehlert and Levy, as well as the 2008 examination by Dr. Toor, because they "significantly predate the claimant's present application for Supplemental Security Benefits." (Id. ).
The Court has reviewed the record, and finds that the assessed RFC conflicts with much of the medical opinion evidence in the record, including Plaintiff's limitations for walking and standing; climbing ropes, scaffolds or ladders; climbing of ramps or stairs; and stooping. Multiple medical sources, including Drs. Torr, Levy, and Boehlert, issued opinions noting pain in Plaintiff's feet, and finding significant limitations in Plaintiff's ability to walk and stand. (See id. at 398 (In December 2008, Dr. Toor opined that Plaintiff had a moderate limitation for standing/walking for longer periods of time, due to pain in his feet due to callosities/corns, and that pain in Plaintiff's left knee, hips, and back also interfered with his physical activities, such as walking or standing for a long time); id. at 408 (In July 2011, Dr. Boehlert opined that Plaintiff had a moderate limitation to heavy ambulation or heavy exertion in the standing position due to foot pain); id. at 440 (in April 2012, Dr. Levy noted mass and tenderness on bottom of Plaintiff's foot, and opined mild limitations for walking and standing); id. at 342 (In 2015, Dr. Toor found that Plaintiff had a moderate-to-severe limitation standing, walking, bending, lifting, and carrying, and that pain interferes with his balance) ). In the report for the most recent opinion relating to Plaintiff's physical limitations (other than the opinion issued by Plaintiff's wrist surgeon), Dr. Toor also observed that Plaintiff's gait was abnormal, he was unsteady and limping, and significantly, "he needs the cane medically for standing and walking ." (Id. at 340) (emphasis added). These limitations do not support an RFC for light work,[3] with no additional limitations for standing or walking. None of the opinion evidence discussed by the ALJ supports the notion that Plaintiff is capable of "a good deal of walking or standing," as required by 20 C.F.R. § 416.967(b), for performing light work, particularly considering the most recent observations by Dr. Toor concerning Plaintiff's ability to ambulate. Similarly, the significant limitations relating to Plaintiff's ability to ambulate are not consistent an RFC requiring Plaintiff to occasionally climb ropes, scaffolds or ladders, frequently climb ramps or stairs, and frequently stoop.
As noted above, the ALJ rejected portions of Dr. Toor's 2015 opinion because it was purportedly vague and was not supported by other evidence in the record. The ALJ's reasoning is flawed. For example, the ALJ found that Dr. Toor's 2015 opinion was "somewhat vague" because it "[does] not delineate the extent to which the claimant could perform certain activities." (Id. at 32). However, the Court's review of the record reveals that most of the other medical opinion evidence discussed by the ALJ for Plaintiff's physical *314 impairments - save for the opinion issued by Dr. Fink, which is a form from the Monroe County Department of Human Services - is in almost the same format as the 2015 report issued by Dr. Toor. (See id. at 339-42, 395-99, 405-08, 436-40). All of the reports are structured with the same sections: chief complaint; past history; current medications; social history; activities of daily living; physical examination of systems; labs and other testing; diagnosis; prognosis; and medical source statement. When comparing the different reports, Dr. Toor's 2015 report appears to be among the more detailed of the group. That being the case, if Dr. Toor's 2015 opinion was not particularly useful because it did not contain information relating to Plaintiff's ability to perform certain activities, it follows that the remaining medical opinion evidence is also vague, and the ALJ should have worked to develop the record to obtain more useful evidence relating to Plaintiff's physical limitations. This error alone would require remand. See Henderson v. Berryhill , 312 F.Supp.3d 364, 371 (W.D.N.Y. 2018) ("where a medical opinion fails to assess a claimant's limitations or provide a permanent or function-by-function analysis of the plaintiff's capabilities, 'the ALJ's duty to develop the record requires the ALJ to seek additional information' rather than rejecting the opinion as vague or incomplete.") (quoting Moreau v. Berryhill , No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *11, 2018 U.S. Dist. LEXIS 41743, at *33-34 (D. Conn. Mar. 13, 2018) ); Fontanez v. Colvin , No. 16-CV-01300 (PKC), 2017 WL 4334127, at *25, 2017 U.S. Dist. LEXIS 160048, at *77-78 (E.D.N.Y. Sept. 28, 2017) ("Additionally, the ALJ failed to develop the record with respect to Dr. Navarro's medical opinion and assessment of Plaintiff's functional limitations. To the extent the ALJ found Dr. Navarro's opinion vague and in need of further explanation, the ALJ should have sought additional information and clarification from Dr. Navarro.").
The ALJ also found that, "[a]t best, Dr. Toor's examination findings suggest a temporary exacerbation in pain in April 2015." (Id. at 32). The Court disagrees. The medical opinion evidence relating to Plaintiff's physical limitations - which spans from 2008 through 2016 - shows consistent and increasing issues with Plaintiff's foot pain and his ability to ambulate. The so-called "exacerbation" of pain in 2015 required Plaintiff to ambulate with a cane, which Dr. Toor noted was medically necessary. In 2016, Plaintiff was scheduled for surgical excision of his left foot fibroma. (Id. at 588). This progression of his impairments is consistent with Plaintiff's testimony at the October 2016 hearing that he had to begin using a cane, and that he didn't "walk too much." (Id. at 49). Further, review of the records pertaining to Plaintiff's foot impairment note continuing and worsening pain. (See, e.g., id. at 585-86 (In June 2016, "Pain in arch of both feet. Getting worse. Lumps in bottom of foot getting larger. Painful to palpation. Has tried change in shoes. NSAIDs, ice, warm soaks. Nothing helps," and "plantar fibroma on palpation of plantar fascia painful to palpation ... painful to walk."); id. at 587 (in July 2016, Plaintiff had continuing foot pain, which increased with walking and standing; because "[c]onservative treatment has not lead to resolution of symptoms ... the patient wishes to proceed with surgery.").[4] In other words, the fact that Plaintiff's foot pain continued well into 2016 does not support "a temporary exacerbation in pain" in 2015. For these reasons, the Court finds that the ALJ's *315 weighing of Dr. Toor's 2015 opinion is flawed.
The Court further finds that the ALJ improperly rejected the opinions of Drs. Boehlert and Levy, as well as the 2008 examination of Dr. Toor, on the sole basis that they predated the relevant period of disability. "[A] medical opinion need not be rejected or ignored solely because it predates the relevant time period, particularly where the record otherwise contains limited information regarding the claimant's functional capabilities...." Williams v. Comm'r of Soc. Sec. , No. 17-CV-6400P, 2018 WL 4443173, at *5, 2018 U.S. Dist. LEXIS 158943, at *12 (W.D.N.Y. Sept. 18, 2018). In light of the ALJ's finding that Dr. Toor's 2015 opinion was vague and lacked information relating to Plaintiff's functional limitations, the ALJ should have more meaningfully considered the opinions of Drs. Boehlert and Levy, as well as the 2008 opinion by Dr. Toor. This is particularly true in this case, where the opinions of Drs. Boehlert and Levy, as well as the 2008 opinion of Dr. Toor, are consistent with timely medical opinion evidence in the record.
The Court is cognizant that the opinions of consultative examiners are not entitled to the same deference as opinions by treating physicians, see Judd v. Berryhill , No. 17-CV-1188, 2018 WL 6321391, at *4, 2018 U.S. Dist. LEXIS 205177, at *12 (W.D.N.Y. Dec. 4, 2018), and that in fashioning an RFC, the ALJ is not required to adopt any one opinion, see Matta , 508 F. App'x at 56. However, the physical RFC appears to be at odds with the opinion evidence in the record, and the ALJ failed to adequately explain how the opinion evidence supports an RFC for light work. See Judd , 2018 WL 6321391, at *4, 2018 U.S. Dist. LEXIS 205177, at *12 ("the relevant inquiry is whether the ALJ provided an adequate explanation for how the Plaintiff could perform light work, despite the moderate to severe limitation with standing, walking, bending and lifting identified by the consultative examiner."). If the ALJ believed that Plaintiff's foot impairment had significantly improved since Dr. Toor's examination in 2015 (see Dkt. 6 at 31 (explaining that treatment notes revealed left foot pain after Plaintiff's August 2016 abdominal surgery, but he denied having falls or weakness, did not have any tenderness, and had good range of motion) ), he should have obtained another, more recent consultative examination to shed light on Plaintiff's physical limitations, rather than substituting his own opinion for that of Drs. Toor, Levy, and Boehlert. Accordingly, this matter is reversed and remanded for further proceedings. On remand, the ALJ is directed to more fully explain his reasoning for not adopting the opinion evidence in the record relating to Plaintiff's limitations, particularly those for walking, standing, stooping and climbing, or obtain updated opinion evidence that more clearly lays out Plaintiff's ability to perform certain activities.
B. Plaintiff's Remaining Arguments
As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. See, e.g., Bell v. Colvin , No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, 2016 U.S. Dist. LEXIS 165592 at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already *316 determined remand was warranted); Morales v. Colvin , No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted , 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 7) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

According to 20 C.F.R. § 416.967(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

At the administrative hearing, Plaintiff testified that he had not yet undergone foot surgery because he was on a waiting list for approval by Medicaid. (See Dkt. 6 at 50).