ELIZABETH A. WOLFORD, United States District Judge *380 INTRODUCTION
Represented by counsel, Plaintiff Talvern Lawton ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 11), and Plaintiff's reply (Dkt. 13). For the reasons discussed below, Plaintiff's motion (Dkt. 9) is granted in part, the Commissioner's motion (Dkt. 11) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed his applications for DIB and SSI on February 19, 2014. (Dkt. 6 at 23, 100-01).[1] In his applications, Plaintiff alleged disability beginning August 30, 2012, due to: bipolar disorder ; borderline personality disorder ; difficulty concentrating on tasks; racing thoughts and confusion; frequent mood swings; difficulty working with others; chronic shoulder pain, including a torn rotator cuff; limited range of motion and inability to lift overhead; and chronic prostatitis. (Id. at 23, 81-82). Plaintiff's applications were initially denied on May 20, 2014. (Id. at 23, 103-118). A hearing was held before administrative law judge ("ALJ") Marie Greener in Syracuse, New York,[2] on May 13, 2016. (Id. at 23, 53-80). On June 14, 2016, the ALJ issued an unfavorable decision. (Id. at 20-35). Plaintiff requested Appeals Council review; her request was denied on July 26, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 5-7). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled."
*381 Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York, 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2013. (Dkt. 6 at 25). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since August 30, 2012, the alleged onset date. (Id. ).
*382 At step two, the ALJ found that Plaintiff suffered from the severe impairments of prostatitis, right shoulder impairment, affective disorder, anxiety disorder, and substance abuse disorder.[3] (Id. at 25-26). The ALJ further found that Plaintiff's medically determinable impairments of abscess on his buttock and scalp, chest pain, high blood pressure, and ulcers were non-severe. (Id. at 26-27).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 27). The ALJ particularly considered the criteria of Listings 1.02, 12.04, and 12.06 in reaching her conclusion. (Id. at 27-29).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of unskilled light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff:
is limited to occasional overhead use of the right upper extremity. He may work in proximity to others, but is limited to tasks that do not require him to work in conjunction with others and that predominantly involve working with objects rather than people. [Plaintiff] is limited to jobs with routine daily tasks and duties in the same workplace, that do no significantly change in pace or location on a daily basis. He requires a 1 to 3-minute break every 30 minutes to use the restroom.
(Id. at 29). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 33).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of mail clerk, office helper, and electronic assembler. (Id. at 34-35). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 35).
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing: (1) the ALJ did not rely on medical opinion evidence to assess Plaintiff's RFC; (2) the ALJ erred in addressing and evaluating opinion evidence; and (3) the ALJ did not properly address Plaintiff's personality disorder, post-traumatic stress disorder, other disorders, and failed to account for these disorders in the RFC and VE hypotheticals. (Dkt. 9-1 at 17-30). For the reasons set forth below, the Court finds that the ALJ's assessment of Plaintiff's RFC, particularly limitations associated with Plaintiff's chronic prostatitis, is unsupported by substantial evidence and that this error necessitates remand for further administrative proceedings.
A. The RFC Finding is Unsupported by Substantial Evidence
In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."
*383 Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin, 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:
An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.... This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.
Quinto v. Berryhill No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 20030, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin, 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).
As noted above, Plaintiff filed his disability applications on February 19, 2014, alleging several impairments, including chronic prostatitis. (Dkt. 6 at 81-82,100-101). At his administrative hearing, Plaintiff testified that he was "working in constant pain and I have to go to the restroom all the time because of my prostate infection. And I'm bleeding - I have blood coming out of my urine. And the last time I was trying to work, I was just working in a lot of pain and I was let go because I wasn't able to perform the job, what was expected." (Id. at 61-62). Plaintiff further testified that he had "been on so many different medications" for his prostate problem, and that while his prostate issue would "clear up for a short period of time ... it comes right back." (Id. at 62). Plaintiff also testified that he uses the restroom four to five times per hour, depending on how much water he had consumed. (Id. at 71). Due to his prostate problems, it took Plaintiff approximately five minutes to use the restroom, and he experienced pain when using the restroom. (Id. ). Plaintiff explained that he first experienced prostatitis in 2007, and that it had gotten worse overtime. (Id. at 72-73). Plaintiff explained:
In the beginning I would just get ... an infection, and then I'd take medication. It'll clear up and I'll be fine for awhile. And then it started, you know, every six months I was having these infections. And I would take the medication, it'll clear up. I'd be fine for awhile. But I'd say in the last couple of years, the period of time that I would be fine for awhile, it's gotten shorter. I mean I've taken medication and it really doesn't help anymore at all. And the doctor's trying to figure out why, and they can't keep me on that type of medication for, you know, eight, nine months because it's harmful to my liver.
(Id. at 73). The VE testified that work would be precluded if Plaintiff required four to five unscheduled restroom breaks in an hour. (Id. at 78-79).
At step two of the disability analysis, the ALJ concluded that Plaintiff's prostatitis was a severe impairment, noting that Plaintiff "complained of urinary symptoms in April, May, and September 2012. He has been diagnosed with prostatitis." (Id. at 25-26). In assessing Plaintiff's RFC, the ALJ rejected Plaintiff's testimony relating to the severity of his prostatitis, explaining:
The claimant has a history of [prostatitis ], which he reports causes him to use the restroom frequently. More specifically, *384 he reports that he must use the restroom four times per hour and requires five minutes each time. Notably, the claimant did not complain of this to his providers. One would expect that an individual who had to use the restroom as often as four times per hour and who required at least five minutes each time, would report these symptoms to his provider and would seek more aggressive treatment. The claimant has been referred to a urologist and only complains of urinary symptoms approximately once per year to his primary care provider. Therefore, I reject the claimant's testimony regarding the frequency and duration of breaks needed.
(Id. at 30) (internal citations omitted). The ALJ ultimately afforded Plaintiff "some accommodation for restroom breaks in the residual functional capacity to account for [Plaintiff's] chronic prostatitis." (Id. at 32). The RFC permits Plaintiff a one-to-three minute break every 30 minutes to use the restroom. (Id. at 29).
As an initial matter, the ALJ's reasons for rejecting Plaintiff's testimony regarding his prostatitis are flawed. The ALJ penalizes Plaintiff for complaining to his medical providers of issues stemming from his prostatitis"approximately once per year." (Id. at 30). However, at his hearing, the claimant specifically explained that his prostatitis would initially respond to treatment for a period of time, but that his symptoms ultimately returned. (Id. at 62, 73). Plaintiff also testified that had taken different medications to treat issues stemming from his prostatitis, but treatment was ultimately unsuccessful. (Id. ). Medical records confirm that Plaintiff was periodically treated for chronic pain relating to his prostatitis, which was a recurrent problem for him despite treatment with antibiotics. (See, e.g., Dkt. 6 at 326 (in April 2012, Plaintiff presented with "dysuria, frequency, 'burning' with urination, hematuria" and Plaintiff's dysuria was a "recurrent problem," that has been "gradually worsening."); id. at 367 (in May 2012, Plaintiff treated for dysuria, reporting that he was treated with cipro the month prior, but that symptoms had returned); id. at 460 (in September 2012, Plaintiff treated for urethral discharge and reported pain when urinating); id. at 508 (in December 2013, Plaintiff "believes his prostatitis is acting up ... his main complaint is urinary frequency"); id. at 516 (at a follow-up visit in January 2014, Plaintiff explained that he took bactrim, which "worked for a long time," and then took "cipro" in December 2013, which initially "resolved the feeling of urgency and limited flow," but he experienced a "[s]low recurrence of symptoms since off meds"); id. at 521 (in November 2014, Plaintiff reported that "he has been having increased urinary frequency again for the last few weeks.") ).
In other words, the record supports Plaintiff's testimony, which was clear as to why he complained of issues stemming from his prostatitis only periodically. The ALJ's failure to address this point when evaluating Plaintiffs credibility amounts to a mischaracterization of the record. See Morales v. Berryhill, No. 14 CV 2803 (KMK) (LMS), 2018 WL 679566, at *18, 2018 U.S. Dist. LEXIS 4034, at *53-54 (S.D.N.Y. Jan. 8, 2018) ("Because the ALJ's credibility analysis is premised, in part, on a mischaracterization of the record, the undersigned cannot conclude that it is supported by substantial evidence. As such, on remand, the ALJ's credibility analysis should take into consideration the fact that Plaintiff repeatedly reported that her pain persisted despite the use of prescription strength medication."), adopted, 2018 WL 679492, 2018 U.S. Dist. LEXIS 16788 (S.D.N.Y. Jan. 31, 2018) ;
*385 Maskell v. Berryhill No. 5:16-cv-60, 2017 WL 2779638, at *6, 2017 U.S. Dist. LEXIS 98879, at *18 (D. Vt. June 27, 2017) ("The case must be remanded because the ALJ's credibility determination relied on perceived inconsistencies that rely on a mischaracterization of the record."). Further, the Court is unclear what "more aggressive treatment" the ALJ believes Plaintiff should have sought. The record reflects that Plaintiff saw multiple providers for issues relating to his prostatitis over a long period of time, and was prescribed different medications to treat symptoms of his prostatitis. Without further explanation by the ALJ, it is not clear to the Court what about this treatment the ALJ found did not support Plaintiff's testimony. The ALJ's rejection of Plaintiff's testimony is particularly problematic in this case, where the VE found a need to use the restroom four to five times per hour would preclude work.
Further, the Court finds that the ALJ's assessment of limitations relating to Plaintiff's prostatitis was based on her own lay interpretation of the medical record. In the written determination, the ALJ discussed the opinion evidence relating to Plaintiff's physical limitations, which included an opinion from Aharon Wolf, M.D., that Plaintiff had no physical limitations. (Dkt. 6 at 32; see also id. at 423-26). Dr. Wolf's opinion does not include an assessment of Plaintiff's limitations relating to his chronic prostatitis. The ALJ acknowledged that "[t]here is no other medical opinion relating to the claimant's physical conditions in the record," and explained that she would include in the RFC "some accommodation for restroom breaks ... to account for the claimant's chronic prostatitis" (id. at 32), which the ALJ apparently determined should be a "one-to-three minute bathroom break every 30 minutes" (id. at 29). The written determination does not contain any further explanation as to how the ALJ arrived at these particular durations.
"[W]here the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual capacities... the Commissioner may not make the connection himself." Quinto, 2017 U.S. Dist. LEXIS 200302, at *37 (citations omitted). Here, the ALJ found that Plaintiff's chronic prostatitis was a severe impairment and, in the absence of any opinion evidence relating to this severe impairment, used her lay judgment to determine what accommodations Plaintiff should be permitted. This was error.
Defendant contends that the ALJ's RFC finding adequately addressed Plaintiff's prostatitis, because it accounted "for Plaintiff's credible need for two restroom breaks per hour," and that Plaintiff's treatment history "did not support further restrictions." (Dkt. 11-1 at 19). Defendant's argument misses the mark. As noted above, the ALJ's credibility determination relating to Plaintiff's prostatitis is flawed, and therefore her explanation as to why Plaintiff's treatment history did not support further limitations was inadequate. Further, even if the ALJ properly evaluated Plaintiff's credibility, the record is devoid of opinion evidence for work-related limitations caused by his prostatitis, which the ALJ determined was a severe impairment. See Jones v. Colvin, No. 14-CV-556S, 2015 WL 5126151, at *4, 2015 U.S. Dist. LEXIS 116298, at *10 (W.D.N.Y. Sept. 1, 2015) ("because the ALJ concluded that Plaintiff's depression was significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying Plaintiff's mental limitations rendered the record incomplete.").
The Court has reviewed Plaintiff's medical records and, aside from the testimony *386 rejected by the ALJ, finds that the records lack information relating Plaintiff's prostatitis symptoms to specific work-related limitations. Accordingly, the RFC finding is not supported by substantial evidence, and this error necessitates remand. See Reyes v. Berryhill, No. 17-CV-1194, 2018 WL 5839276, at *3, 2018 U.S. Dist. LEXIS 191470, at *7 (W.D.N.Y. Nov. 8, 2018). On remand, the ALJ should obtain an opinion relating to what accommodations Plaintiff should be afforded based on his prostatitis diagnoses, and more fully explain her reasoning for affording or not affording Plaintiff any specific accommodation.
B. Plaintiff's Remaining Arguments
As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. See, e.g., Bell v. Colvin, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *9-10, 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin, No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted, 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 9) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand comer of each document.

While the written determination states that the hearing took place in Rochester, New York, the hearing transcript states that the hearing was held in Syracuse, New York, and that Plaintiff appeared in person.

The heading for the ALJ's step two determination states that Plaintiff suffers from the severe impairments of "prostatitis, right shoulder impairment, affective disorder, and anxiety disorder," but in the explanation, the ALJ found Plaintiff's substance abuse disorder to be a severe impairment as well. (See Dkt. 6 at 26 ("I find the claimant's affective disorder, anxiety disorder, and substance abuse disorder are severe in combination.") ).