ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Kristin Raymond ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 13), and Plaintiff's reply (Dkt. 14). For the reasons discussed below. Plaintiff's motion (Dkt. 8) is granted in part, the Commissioner's motion (Dkt. 13) is denied, and the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed her applications for DIB and SSI on October 3, 2013. (Dkt. 5 at 18, 85-86).[1] In her applications, Plaintiff alleged disability beginning January 28, 2011, due to the following impairments: lupus, fibromyalgia, and arthritis ; limitations lifting, pulling, walking, using stairs, and doing chores; fatigue, joint pain, and numbness in her feet; swollen knuckles and toes; bipolar disorder ; and manic days and depression. (Id. at 18, 87, 95). Plaintiff's applications were initially denied on February 26, 2014. (Id. at 18, 108-23). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Sharon Seeley in Buffalo, New York, on June 13, 2016. (Id. at 18, 37-84). On September 29, 2016, the ALJ issued an unfavorable decision. (Id. at 15-31). Plaintiff requested Appeals Council review; her request was denied on November 21, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 5-7). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It *235 means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on *236 December 31, 2011. (Dkt. 5 at 20). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 28, 2011, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of "fibromyalgia, Sjogren's syndrome, depressive disorder and bipolar disorder." (Id. at 21). The ALJ further found that Plaintiff's medically determinable impairments of cocaine and marijuana dependence were non-severe. (Id. ). With respect to Plaintiff's representations that she suffered from lupus and greater trochanteric bursitis, the ALJ concluded that these were not medically determinable impairments. (Id. ).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. ). The ALJ particularly considered the criteria of Listings 12.04, 12.06, 14.09D, and 14.10 in reaching her conclusion. (Id. at 21-23).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff:
can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit for six hours and stand and/or walk six hours in an eight-hour workday but must be able to alternate at will between sitting and standing. She can frequently balance and stoop; frequently handle and finger; and occasionally kneel, crouch and crawl; and have occasional exposure to vibrations. Further, [Plaintiff] can understand, remember and carry out simple, routine, repetitive instructions and tasks; maintain attention and concentration sufficient for such tasks with customary breaks; and make simple work related decisions commensurate with such tasks. In addition, [Plaintiff] can work in a low stress environment (meaning one with no supervisory responsibilities; no independent decision making required except with respect to simple, routine work related tasks; no work at production rate pace; and no more than minimal changes in work routines, processes or settings); and can have occasional interaction with supervisors, coworkers and the general public.
(Id. at 23). At step four, the ALJ found that Plaintiff had no past relevant work. (Id. at 29).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of envelope addresser, stuffer, and painter. (Id. at 29-30). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 30-31).
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ erred by not explaining the basis of the step three finding that Plaintiff did not meet or equal Listing 14.10(A), and (2) the ALJ erred by assessing Plaintiff's RFC without a useful medical opinion. (Dkt. 8-1 at 1). For the reasons set forth below, the Court finds that the ALJ failed to adequately consider whether Plaintiff's Sjogren's syndrome meets the requirements of Listing 14.10(A), and that this error necessitates remand for further proceedings.
*237 A. The Step Three Analysis
Plaintiff argues that the ALJ's step three analysis was deficient because she did not examine in detail the requirements of Listing 14.10(A) and the evidence that Plaintiff met this Listing. (Id. at 12). "Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." Rockwood v. Astrue , 614 F.Supp.2d 252, 272 (N.D.N.Y. 2009), adopted , 614 F.Supp.2d 252 (N.D.N.Y. 2009). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." Loescher v. Berryhill , No. 16-CV-300-FPG, 2017 WL 1433338, at *3, 2017 U.S. Dist. LEXIS 61642 at *7 (W.D.N.Y. Apr. 24, 2017) (internal quotation and citation omitted). "If a claimant's impairment manifests only some of those criteria, no matter how severely. such impairment does not qualify." Rockwood , 614 F.Supp.2d at 272 (internal quotations and citations omitted).
An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.' " Rockwood , 614 F.Supp.2d at 273 (quoting Kuleszo v. Barnhart , 232 F.Supp.2d 44, 52 (W.D.N.Y. 2002) ) (alteration in original). "[I]t is the ALJ's responsibility ... to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." Loescher, 2017 WL 1433338, at *3, 2017 U.S. Dist. LEXIS 61642, at *7 (internal quotations and citations omitted) (second alteration in original). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." Ryan v. Astrue , 5 F.Supp.3d 493, 507 (S.D.N.Y. 2014) (citation omitted).
Listing 14.10(A) requires a showing of Sjogren's syndrome, with:
Involvement of two or more organs/body systems, with:
1. One of the organs/body systems involved to at least a moderate level of severity; and
2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
20 C.F.R. Part 404, Subpt. P, App. 1, § 14.10. According to the regulations, the other organs/body systems that may be involved include:
musculoskeletal (arthritis, myositis ), respiratory (interstitial fibrosis ), gastrointestinal (dysmotility, dysphagia, involuntary weight loss), genitourinary (interstitial cystitis, renal tubular acidosis ), skin (purpura, vasculitis ), neurologic (central nervous system disorders, cranial and peripheral neuropathies ), mental (cognitive dysfunction, poor memory), and neoplastic (lymphoma ). Severe fatigue and malaise are frequently reported. Sjogren's syndrome may be associated with other autoimmune disorders (for example, rheumatoid arthritis or SLE); usually the clinical features of the associated disorder predominate.
Id. § 14.00(7)(a)(ii). In this case, at step three, the ALJ addressed Listing 14.10:
I have given particular attention to Listing 14.10, Sjogren's syndrome. However, the available medical evidence does not demonstrate involvement of two more body systems with at least a moderate *238 level of severity or marked limitation of activities of daily living, maintaining social functioning or completing tasks in a timely manner due to deficiencies in concentration, persistence and pace.
(Dkt. 5 at 21). Plaintiff contends that because she made a prima facie showing that the requirements of Listing 14.10 were met, the ALJ was required to more than merely paraphrase the requirements at step three of the sequential analysis. (Dkt. 8-1 at 12-14). Plaintiff points specifically to evidence that she presented demonstrating the involvement of two or more body systems, including her musculoskeletal system, eyes, hair, and extremities. (Id. at 15). Plaintiff further contends that the involvement of the musculoskeletal system was at least of a moderate level, as evidenced by the ALJ's limiting Plaintiff to light work with additional accommodations. (Id. at 15-16). Finally, Plaintiff contends that she presented evidence that at least two constitutional symptoms were involved, including severe fatigue and malaise. (Id. at 16). Defendant responds that although the ALJ could have provided more detail in support of her step three finding, remand is not required because other portions of the ALJ's decision supports that the step three finding is supported by substantial evidence. (Dkt. 13-1 at 19-20). See also Flake v. Comm'r of Soc. Sec. , No. 7:15-CV-1128 (GTS/WBC), 2016 WL 7017355, at *5-6, 2016 U.S. Dist. LEXIS 165893 at *14-15 (N.D.N.Y. Nov. 10, 2016) ("The Second Circuit has held that 'the absence of an express rationale does not prevent [the court] from upholding the ALJ's determination regarding [Plaintiff's] claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence.' " (quoting Berry v. Schweiker , 675 F.2d 464, 468 (2d Cir. 1982) ) (alterations in original), adopted , 2016 WL 7017396, 2016 U.S. Dist. LEXIS 165713 (N.D.N.Y. Dec. 1, 2016).
The Court has reviewed the record and the written determination and concludes that the ALJ erred by failing to further explain her conclusion that Plaintiff did not meet the requirements of Listing 14.10(A). As an initial matter, the written determination contains a discussion of some evidence relevant to the requirements for Listing 14.10(A). For example, the written determination acknowledges the involvement of Plaintiff's musculoskeletal system, as well as her reports of fatigue and malaise. (See, e.g. , Dkt. 5 at 24 (lab results were positive for Sjogren's syndrome, and Plaintiff had trigger points, tenderness, and pain, but good range of motion and strength); id. at 25 (Plaintiff reported severe fatigue to her primary care provider); id. at 25 ("She reported diffuse body pain from head to toe that was worse towards the end of the day and with activity.") ). The ALJ found Plaintiff's allegations regarding the severity of her musculoskeletal pain not credible. (Id. at 24, 26-27). However, it is unclear to the Court how the ALJ concluded that the involvement of this system did not rise to the moderate level, particularly because the ALJ assessed an RFC that includes several physical limitations for tasks involving the musculoskeletal system. (Id. at 23). Similarly, it is unclear to the Court why the ALJ found that Plaintiff failed to meet the requirement of exhibiting two constitutional symptoms or signs. As noted by the ALJ in the written determination, at least some of Plaintiff's complaints of fatigue and discomfort were borne out by examinations. (See, e.g., id. at 24-25 (explaining that laboratory results were positive for Sjogren's syndrome, Plaintiff had multiple trigger points and her joints were tender throughout, and examinations were positive for swelling and tenderness) ). In other words, the Court is unable to glean from the *239 written determination how the ALJ arrived at the conclusion that Plaintiff's musculoskeletal pain, as well as her complaints of fatigue and malaise, fail to satisfy the requirements of Listing 14.10(A).
Further, other requirements of Listing 14.10(A) are not addressed, including evidence of additional body systems affected by Plaintiff's Sjorgen's syndrome, such as her eyes, hair, and extremities. The lack of discussion on these points is problematic, as the medical record contains evidence that these systems were implicated on an ongoing basis. (See Dkt. 5 at 342 (in July 2013, Plaintiff complained of numbness and tingling); id. at 351-52 (in May 2013, Plaintiff was "[p]ositive for alopecia, photosensitivity, malar rash" and "[p]ositive for numbness and tingling"); id. at 359 (in January 2010, Plaintiff appeared acutely ill and weak, and an examination of her ears, nose, mouth and throat revealed that mucous membranes were dry); id at 402 (in April 2013, Plaintiff reported burning, fatigue, numbness, and tingling); id. at 520 (in July 2014, Plaintiff reported chronic fatigue, marked hair loss, weight gain, blurred vision, numbness and tingling in her upper extremities, photosensitivity, and "fairly significant dry eye," which she believed was a side effect of her medications); id. at 527 (in October 2014, Plaintiff reported chronic fatigue, hair loss, weight gain, dry eye and mouth); id. at 578 (in May 2016, Plaintiff complained of dry eyes and dry mouth) ). The Court further notes that there is evidence in the record of Plaintiff's mental impairments (which the ALJ concluded qualified as "severe"), as well as gastrointestinal issues. (See, e.g. , Dkt. 5 at 384, 388, 392). None of this evidence is discussed by the ALJ in the written determination, and the ALJ's failure to engage in a meaningful discussion of why these impairments did not qualify as additional body systems affected by Plaintiff's Sjogren's syndrome was error. See Flake, 2016 WL 7017355, at *6, 2016 U.S. Dist. LEXIS 165893, at *16 (remand required for ALJ to articulate her step three determination, where "[t]here is also medical evidence in the record that Plaintiff's SLE included involvement of two or more organs/body systems, as required by Listing 14.02(A)(1). For example[,] the record contained documentation of neuropathy, mental impairments, fibromyalgia, and alopecia.").
Defendant contends that the record as a whole does not support the involvement of multiple organs/body systems. (Dkt. 13-1 at 20). In support of this argument, Defendant points to evidence in the record wherein Plaintiff did not report dry eyes, alopecia, or a neurological impairment, or where physical examinations did not support the existence of these symptoms. (Id. at 20-21). However, when there is conflicting evidence in the record as to whether Plaintiff meets a particular listing, the ALJ must do more than state in a conclusory fashion that Plaintiff's impairments do not meet the listing. See Flake, 2016 WL 7017355, at *6, 2016 U.S. Dist. LEXIS 165893, at *15 ("There is conflicting evidence in the record regarding whether Plaintiff met the criteria for Listing 14.02 and because the ALJ failed to discuss this conflicting evidence, at step three or elsewhere, it cannot be determined whether the ALJ's conclusion at step three is supported by substantial evidence."). Defendant's after-the-fact explanation as to why the ALJ concluded that Plaintiff does not meet the requirements of Listing 14.10(A) cannot serve as a substitute for the ALJ's findings. See Snell v. Apfel , 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court may not accept appellate counsel's post hoc rationalizations for agency action);
*240 Michels v. Berryhill , No. 1:15-CV-00688 (MAT), 2018 WL 1081013, at *3, 2018 U.S. Dist. LEXIS 32627 at *7 (W.D.N.Y. Feb. 28, 2018) ("[i]t is not the role of this Court to weigh the evidence of record and determine in the first instance whether or not Plaintiff's learning disorder constituted a severe impairment-that task falls to the ALJ, who failed to fulfill his obligation in this case.").
In sum, the ALJ assessed Plaintiff with the severe impairment of Sjogren's syndrome, a diagnosis which Defendant does not dispute. Further, the ALJ assessed several physical limitations in the RFC, which tend to support the involvement of Plaintiff's musculoskeletal system, and the medical record clearly demonstrates the involvement of other body systems, as required by the regulation. Without additional explanation by the ALJ as to how she concluded that Plaintiff does not meet the requirements of Listing 14.10(A), the Court is unable to assess whether the ALJ's conclusion is supported by substantial evidence. At the very least, based on the above-mentioned evidence in the record, the ALJ should have more carefully explained her reasoning as to why Plaintiff did not meet the requirements of Listing 14.10. See Hendricks v. Comm'r of Soc. Sec. , 452 F.Supp.2d 194, 199 (W.D.N.Y. 2006) (The ALJ was required to evaluate all of the [conflicting] evidence in the record, and he may have done so here. Unfortunately, however, because the ALJ failed to discuss the basis for finding that plaintiff's impairments did not meet or equal a Listing, [the Court] cannot determine whether his conclusion at step three is supported by substantial evidence."). On remand, the ALJ is directed to carefully examine the requirements of Listing 14.10 and the evidence in the record relevant to that Listing, and adequately explain her reasoning as to why Plaintiff meets or does not meet Listing 14.10.
B. Plaintiff's Remaining Argument
As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. See, e.g., Bell v. Colvin , No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, 2016 U.S. Dist. LEXIS 165592 at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin , No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23, 2015 U.S. Dist. LEXIS 58236 at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted , 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further proceedings. Defendant's motion for judgment on the pleadings (Dkt. 13) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.